IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SNAPTRACK, INC., et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>ZOLTAR SATELLITE ALARM SYSTEMS, INC.,<br><br>   Defendant.<br>_____/ | NO. C 01-20291 JW<br><br>**ORDER DENYING ZOLTAR'S MOTION FOR SUMMARY JUDGMENT RE: NO INEQUITABLE CONDUCT** |

## I. INTRODUCTION

This patent infringement case was tried to a jury. Zoltar Satellite Alarm ("Zoltar") claimed that Snaptrack, Inc. and Qualcomm, Inc. (collectively, "Qualcomm") infringed certain claims in three Zoltar patents. Following the jury's partial verdict, this Court scheduled the current round of summary judgment motions. Presently before the Court is Zoltar's Motion for Summary Judgment Re: No Inequitable Conduct. The Court held a hearing on Zoltar's Motion on June 20, 2006. Based on the parties' statements at the hearing and on the papers submitted, the Court DENIES Zoltar's Motion for Summary Judgment Re: No Inequitable Conduct.

## II. BACKGROUND

In March 2001, Zoltar filed suit against Qualcomm asserting U.S. Patent Nos. 5,963,130 ("'130 patent"), 5,650,770 ("'770 patent"), and 6,198,390 ("'390 patent"). The '130 patent, '770 patent, and '390 patent were co-invented by emergency room physician Dr. Dan Schlager and

electrical engineer Dr. William Baringer. These patents are directed at personal alarm systems with a remote transmitting unit and a base receiving and monitoring station. In early 2004, the parties tried the case before a jury.

At trial, Dr. Schlager testified about his attendance at the May 1997 Wireless Emergency Services Conference in San Francisco where Boston-based entrepeneur and patent attorney, Robert Tendler presented a device called FoneFinder. Tendler is also the inventor of a number of patents, including: U.S. Patent Nos. 5,555,286 entitled, "Cellular Phone Based Automatic Emergency Vessel/Vehicle Location System" ('286 patent) issued September 10, 1996, and 4,833,477, entitled "Emergency Vessel Location System." ('477 patent) issued May 23, 1989.

At the close of the evidence, both parties filed pre-verdict motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. These motions were taken under submission by the Court and the case was submitted to the jury for decision.

The jury was unable to reach a verdict on every question submitted. Relevant to the present motion, the jury was unable to reach a verdict on the following two questions:

> 7. With respect to the following claim [Claim 32] of U.S. Patent No. '770 do you find that the claim is unenforceable because Qualcomm and SnapTrack have proved by clear and convincing evidence that the inventors, Dr. Schlager and Mr. Baringer, or their representatives, intentionally withheld information regarding Tendler from the Patent Office in the prosecution of that Zoltar '770 Patent?
>
> 24. With respect to the following claim [Claim 13] of U.S. Patent No. '130 do you find that the claim is unenforceable because Qualcomm and SnapTrack have proved by clear and convincing evidence that the inventors Dr. Schlager and Mr. Baringer or their representatives, intentionally withheld information regarding Tendler from the Patent Office in the prosecution of that Zoltar '770 Patent?

(Jury Verdict Form, attached at Exh. 4 to Docket Item No. 681.)

After return of the partial verdict, the parties renewed their respective motions for judgment as a matter of law. Based on the pre-verdict motions, the Court was empowered to decide whether to allow the verdict to stand as to those claims or defenses fully adjudicated by the jury or to render a judgment notwithstanding the verdict.

On July 26, 2004, the Court entered an Order finding that since the jury found no

2

1 infringement as to two of the patents in suit and because the Court entered judgment as a matter of
2 law as to the other patent in suit, judgment should be entered in favor of Qualcomm on all
3 adjudicated claims. The Court denied Qualcomm's Motion for Judgment on the defenses, did not
4 address any of the counterclaims, and conditionally denied Zoltar's alternative motion for a new trial
5 as to U.S. Patent No. 6,198,390.

6 A Judgment consistent with the July 26 Order was entered. Zoltar appealed the Judgment to
7 the Federal Circuit. On February 1, 2005, the Federal Circuit dismissed Zoltar's appeal, on the basis
8 that there was no final judgment.

9 This Court's order in May 2005 denied Zoltar's motion for certification of judgment, and
10 stated that the Court would conduct further proceedings to determine a number of remaining issues.
11 On February 27, 2006, the Court scheduled the current round of summary judgment motions.

## III. STANDARDS

13 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and
14 admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any
15 material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.
16 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims
17 or defenses." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

18 The moving party "always bears the initial responsibility of informing the district court of the
19 basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to
20 interrogatories, and admissions on file, together with the affidavits, if any' which it believes
21 demonstrate the absence of a genuine issue of material fact." Id. at 323. If the moving party meets
22 this burden, that party is then entitled to judgment as a matter of law when the non-moving party
23 fails to make a sufficient showing on an essential element of his case with respect to which he bears
24 the burden of proof at trial. Id. at 322-23.

25 The non-moving party "must set forth specific facts showing that there is a genuine issue for
26 trial. " Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly

1  supported motion for summary judgment simply by alleging some factual dispute between the
2  parties. To preclude the entry of summary judgment, the non-moving party must bring forth
3  material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . .
4  Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby,
5  Inc., 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there
6  is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio,
7  475 U.S. 574, 586 (1986).

8  A party opposing a motion for summary judgment of inequitable conduct is entitled to the
9  usual summary judgment presumptions: "[T]he evidence of the nonmovant is to be believed, and all
10 justifiable inferences are to be drawn in his favor." See Monsanto Co. v. Bayer BioScience, N.V.,
11 363 F.3d 1235, 1240 (Fed. Cir. 2004). These inferences can even include questions of credibility
12 and of the weight to be accorded particular evidence. Masson v. New Yorker Magazine, Inc., 501
13 U.S. 496, 520 (1991) (citing Anderson, 477 U.S. at 255); Matsushita, 475 U.S. at 588; T.W. Elec.
14 Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). It is the court's responsibility "to
15 determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed
16 background or contextual facts, are such that a rational or reasonable jury might return a verdict in
17 its favor based on that evidence." T.W. Elec. Serv., 809 F.2d at 631. "[S]ummary judgment will not
18 lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable
19 jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. However, "[w]here
20 the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,
21 there is no genuine issue for trial.'" Matsushita, 475 U.S. at 587.

## IV.  DISCUSSION

### A.  '770 Patent

"To hold a patent unenforceable for inequitable conduct, a court must first find, by clear and convincing evidence, that the applicant omitted or misrepresented material facts with the intention of misleading or deceiving the patent examiner." Monsanto Co. v. Bayer Bioscience N.V., 363 F.3d

4

1235, 1239 (Fed.Cir. 2004).  "Once the challenger has shown the requisite levels of materiality and intent, the district court must balance the equities to determine whether the patentee has committed inequitable conduct that warrants holding the patent unenforceable."  Id.

Zoltar argues that it is entitled to summary judgment that Qualcomm cannot show by clear and convincing evidence that the '770 patent, issued July 22, 1997, is unenforceable for inequitable conduct based on the withholding of information regarding Tendler because such information was not material and was not withheld with an intent to deceive.

1. Materiality

In evaluating materiality for purposes of inequitable conduct, the Federal Circuit has identified five different categories of materiality.  See Digital Control v. Charles Machinery, 437 F.3d 1309 (Fed. Cir. 2006).  The first is the objective "but for" standard where the misrepresentation was so material, the patent should not have issued.  The second is the subjective "but for" standard where the misrepresentation may have influenced the patent examiner in the course of examination.  The third is the "but it may have" standard, where the misrepresentation may have influenced the patent examiner in the course of examination.  Id at 1315.  The fourth defines the test for material information as where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.  This version stems from the 1977 version of 37 C.F.R. § 1.56 which clarifies the duty of candor and good faith as a requirement for applicants to disclose "information they are aware of which is material."  C.F.R.§ 1.56 was later amended in 1992, creating the fifth category.  As defined by the 1992 amendment, information is material to patentability when it is not cumulative to information already of record or being made of record, and that either (1) by itself or in combination with other information, establishes a prima facie case of unpatentability of a claim; or (2) refutes, or is inconsistent with, a position the applicant takes in opposing an argument of unpatentability relied on by the Office or asserting an argument of patentability.

Zoltar argues that information regarding Tendler did not need to be disclosed to the patent

5

1  examiner in the prosecution of the '770 patent because the Tendler references were merely
2  cumulative to information already of record.  In support of its position, Zoltar points to the
3  subsequent prosecution of the '130 and '390 patents where the '286 patent and the '477 patent were
4  before the examiner but not used by the examiner as a basis for claim rejection.  Because the only
5  claim rejection in the '130 patent was based on a reference called referred to as "Glidewell," Zoltar
6  argues that "the examiner's decision not to rely on the Tendler patents during the prosecution of the
7  '130 patent indicates that he considered the Tendler patents not material to the patentability of the
8  application in view of the other references (e.g. Glidewell) he had before him." (Mot. at 5:25-6:3.)

9       As an initial matter, Zoltar fails to address the other four categories of materiality.  Whether
10  the examiner chose to cite the prior art in the disallowance of a claim in a subsequent patent may be
11  relevant to a finding that the prior art was cumulative, but does not demonstrate that an absence of a
12  triable issue as to the other standards of materiality.  Although the current version of C.F.R.§ 1.56
13  states a higher standard of materiality in the "not cumulative" group of material information, the
14  Federal Circuit has interpreted C.F.R.§ 1.56 as simply the USPTO's attempted codification of
15  established case law.  See Digital Control, 437 F.3d at 1316.  Therefore the USPTO's adoption of
16  "an arguably narrower standard of materiality does not supplant or replace our case law." Id.
17  Instead, it "merely provides an additional test of materiality." Id.  Because Zoltar has only provided
18  its argument that Qualcomm does not meet one of five categories of materiality, and not addressed
19  the other four categories, it has not demonstrated the absence of a genuine issue of material fact.

20       Furthermore, even had Zoltar met its initial burden, co-inventor Baringer's testimony at trial
21  regarding FoneFinder, and a cursory comparison of FoneFinder with at least Claim 55 of the '770
22  patent indicates that there is a issue of triable fact as to whether the Tendler references are material.
23  See Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 326 F.3d 1226, 1234 (Fed. Cir. 2004)
24  (finding that it is a question of fact as to whether a reference falls into the category of "any
25  information that a reasonable examiner would be substantially likely to consider important in
26  deciding whether to allow an application to issue as a patent").

6

### 2. Intent to Deceive

Intent to deceive is "a separate and essential component of inequitable conduct." Manville Sales Corp. v. Paramount Systems, Inc., 97 F.2d 544, 552 (Fed. Cir. 1990). Thus, intent to deceive cannot be inferred solely from the fact that information was not disclosed. Upjohn Co. v. Mova Pharma. Corp., 225 F.3d 1312 (Fed. Cir. 2000). Nor can it be inferred solely from the materiality of the withheld information. See Braun, Inc. v. Dynamics Corp. of America, 975 F.2d 815, 822 (Fed. Cir. 1992) ("Thus, in attempting to prove inequitable conduct, [defendant] could not rely solely on the materiality of [plaintiff's] prior art."). However, direct evidence of intent to deceive or mislead the USPTO is " 'rarely available but may be inferred from clear and convincing evidence of the surrounding circumstances.' " Baxter Int'l. Inc. v. McGaw Inc., 149 F.3d 1321, 1329 (Fed. Cir. 1988) (quoting LaBounty Mfg., Inc. v. USITC, 958 F.2d 1066, 1076 (Fed. Cir. 1992)). The Federal Circuit recognizes that a "smoking gun" is not required to establish an intent to deceive. Paragon Podiatry Lab., Inc. v. KLM Labs., Inc., 984 F.2d 1182, 1189 (Fed. Cir. 1993).

Zoltar contends that Schlager did not have the requisite intent to deceive because Schlager had a practice of disclosing prior art to his attorney, but did not find the Tendler references to be material to the subject of the '770 patent. Dr. Schlager's mere statement about his practice of disclosing prior art to his attorney may demonstrate his good faith as to the prior art actually disclosed, but does not create an inference either way as to the undisclosed Tendler references.

According to Qualcomm, Schlager knew of the FoneFinder device and of Tendler's patents while the '770 patent application was still pending and yet did not inform the patent examiner of this. The parties agree that Schlager, the co-inventor of the '770 patent, went to a conference while his application for what became the '770 patent was pending. At this conference, Tendler presented FoneFinder. According to Tendler's trial testimony, Schlager approached Tendler at the conference and congratulated him on his FoneFinder presentation. Tendler further testified that Schlager told him "I've got a patent coming out," and in response Tendler asked Schlager, "Well did you cite my patents in your patent?" Schlager's response, according to Tendler, was that of a "deer in

headlights." Schlager denies having this conversation with Tendler. Whether the conversation between Tendler and Schlager unfolded in this manner, or even occurred, is an issue of fact. Construing the facts in the light most favorable to the nonmoving party, there is a genuine issue of material fact as to whether Schlager acted with the requisite intent.

Once threshold findings of materiality and intent are established, the trial court must weigh them to determine whether the equities warrant a conclusion that inequitable conduct occurred." Purdue Pharma v. Endo, 438 F.3d 1123, 1128 (Fed. Cir. 2006) (citing Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995)). "This requires a careful balancing: when the misrepresentation or withheld information is highly material, a lesser quantum of proof is needed to establish the requisite intent." Purdue Pharma v. Endo, 438 F.3d 1123, 1128 (Fed. Cir. 2006) (citing N.V. Akzo v. E.I. DuPont de Nemours, 810 F.2d 1148, 1153 (Fed. Cir. 1987)). In light of this sliding scale, "a grant of summary judgment on the issue of inequitable conduct is permissible, but uncommon. Generally . . . the concerns attendant to awards of summary judgment on inequitable conduct relate to the inherently factual nature of the issue of intent." Digital Control, 437 F.3d at 1317.

Based on the issues of material fact which remain, summary judgment on the issue of no inequitable conduct as to the '770 patent is DENIED.

**B.    '130 Patent**

The parties agree that the '286 patent and the '436 patent were before the PTO during the prosecution of the '130 patent. Qualcomm nevertheless argues that the '130 patent is unenforceable for inequitable conduct based on the prosecution of the '770 patent under the doctrine of "infectious unenforceability." Zoltar seeks summary judgment on the issue that "infectious unenforceability" does not operate to bar enforcement of the '130 patent.[1]

---

[1] Qualcomm also argues that has an argument for inequitable conduct based on Schlager's failure to disclose the FoneFinder device in the prosecution of the '130 patent. Because Zoltar did not expressly move for summary judgment of no inequitable conduct based on this argument, the Court declines to address the issue at this juncture.

8

Infectious unenforceability operates to bar enforcement of a patent based on inequitable conduct as to a closely related patent. To prove infectious unenforceability, an accused infringer must establish: (1) that a patent is unenforceable due to inequitable conduct, and (2) that related patents bear and immediate and necessary relation to that alleged inequitable conduct. <u>MOSAID Tech. Inc., v. Samsung Elecs. Co.</u>, 362 F. Supp. 2d 526, 553-54 (D.N.J. 2005) (citing <u>Arthrocare Corp. v. Smith & Nephew, Inc.</u>, 310 F. Supp. 2d 638, 675 (D. Del. 2004)).

In <u>MOSAID</u>, the defendant alleged that MOSAID failed to disclose a material prior art reference in the prosecution of U.S. Patent No. 5,214,602 ("'602 patent"), and that four other patents in the same line of patents that cite the '602 patent as part of their prosecution history are all unenforceable even though MOSAID disclosed the prior art in question in the prosecution of those four patents. <u>MOSAID</u>, 362 F. Supp. 2d at 554. The court in <u>MOSAID</u> recognized, but declined to apply the doctrine of infectious unenforceability to the case before it, finding that the failure to disclose the material prior art reference in the prosecution of the '602 patent was mere clerical error, not inequitable conduct. <u>Id</u>. at 555.

Based on the preceding discussion of the factual issues which remain regarding the alleged inequitable conduct, the Court declines to find at this time that inequitable unenforceability is inapplicable to bar enforcement of the '130 patent.

## V.  CONCLUSION

For the reasons stated above, Zoltar's Motion for Summary Judgment Re: No Inequitable Conduct is DENIED as to both the '770 patent and the '130 patent.

Dated: July 10, 2006  /s/ James Ware
01cv20291inequit  JAMES WARE
United States District Judge

9

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Amy K. Van Zant avanzant@hewm.com
Chris N. Cravey ccravey@wmalaw.com
Danny L. Williams danny@wmalaw.com
Michael M. Markman mmarkman@hewm.com
Robert T. Haslam Robert.Haslam@hellerehrman.com
Ron Schlager LeglBeagl1@AOL.com

Beverly Tucker
California Teachers Association
P.O. Box 921
Burlingame, CA 94011-0921

**Dated: July 10, 2006**                    **Richard W. Wieking, Clerk**

                                            **By:_/s/ JW Chambers_____
                                                Melissa Peralta
                                                Courtroom Deputy**