United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SNAPTRACK, INC., et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>ZOLTAR SATELLITE ALARM SYSTEMS, INC.,<br><br>      Defendant. | NO. C 01-20291 JW<br><br>**ORDER DENYING IN PART QUALCOMM'S MOTION FOR SUMMARY JUDGMENT RE: INVALIDITY; GRANTING IN PART ZOLTAR'S CROSS-MOTION STRIKING IN PART AFFIRMATIVE DEFENSE OF INVALIDITY BY ANTICIPATION; VACATING JURY VERDICT THAT CLAIM 11 OF THE '390 PATENT IS ENABLED** |

## I. INTRODUCTION

This patent infringement case was tried to a jury. At trial, Zoltar Satellite Alarm ("Zoltar") claimed that Snaptrack, Inc. and Qualcomm, Inc. (collectively, "Qualcomm") infringed certain claims in three patents. In response, Qualcomm contended that the asserted patent claims were invalid or unenforceable. Following the jury's partial verdict, this Court scheduled the current round of summary judgment motions. Presently before the Court are the parties' cross-motions on invalidity by anticipation as to Claims 31, 32, 34, and 35 of U.S. Patent No. 5,963,130 ("'130 Patent"), invalidity by obviousness as to Claims 34 and 35 of the '130 Patent, and invalidity as not enabled as to Claim 13 of the '130 Patent, Claim 32 of U.S. Patent No. 5,650,770 ("'770 Patent"), and Claim 11 of U.S. Patent No. 6,198,390 ("'390 Patent"). The Court held a hearing on the parties'

Cross-Motions on June 20, 2006. After having considered the parties' arguments and submissions, and for the reasons set forth below, this Court DENIES in PART Qualcomm's motion and GRANTS in PART Zoltar's Motion striking in part the affirmative defense of invalidity by anticipation. Summary judgment on the issues of obviousness and enablement is DENIED as to both parties. The jury's verdict that Claim 11 of the '390 patent is enabled is VACATED.

## II.  BACKGROUND

In March 2001, Zoltar filed suit against Qualcomm asserting the '130 patent, '770 patent, and '390 patent. These patents are directed at personal alarm systems with a remote transmitting unit and a base receiving and monitoring station. In early 2004, the parties tried the case before a jury. At the close of the evidence, both parties filed pre-verdict motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. These motions were taken under submission by the Court and the case was submitted to the jury for decision.

The jury was unable to reach a verdict on every question submitted. Relevant to the present motion, the jury was unable to reach a verdict on the following questions:

> 8. Do you find that Qualcomm and Snap Track have proved by clear and convincing evidence that [Claim 32 of the '770 patent is] not enabled?
>
> 20. With respect to [Claims 31, 32, 34, 35] of U.S. Patent No. '130, do you find that Qualcomm and SnapTrack have proved by clear and convincing evidence that the claim is invalid as anticipated by the Penny Patent 5,414,432 ?
>
> 23. With respect to [Claims 31, 32, 34, 35] of U.S. Patent No. '130, do you find that Qualcomm and SnapTrack have proved by clear and convincing evidence that the claim is invalid as habing been obvious to a person skilled in the art at the time the Zoltar invention was made, based on the Lewis and/or Penny Patent?
>
> 26. Do you find that Qualcomm and SnapTrack have proven by clear and convincing evidence that [Claim 13 of the '130 patent is] not enabled?

The jury answered the following question in the negative:

> 41. Do you find that Qualcomm and SnapTrack have proved by clear and convincing evidence that [Claim 11 of the '390 patent is] not enabled?

Jury Verdict Form, Docket Item No. 526.

After return of the partial verdict, the parties renewed their respective motions for judgment

2

as a matter of law. Based on the pre-verdict motions, the Court was empowered to decide whether to allow the verdict to stand as to those claims or defenses fully adjudicated by the jury or to render a judgment notwithstanding the verdict.

On July 26, 2004, the Court entered an Order finding that since the jury found no infringement of two of the patents in suit and because the Court entered judgment as a matter of law on the other patent in suit, judgment should be entered in favor of Qualcomm on all adjudicated claims. The Court denied Qualcomm's Motion for Judgment on the defenses, did not address any of the counterclaims, and conditionally denied Zoltar's alternative motion for a new trial on U.S. Patent No. 6,198,390.

A Judgment consistent with the July 26 Order was entered. Zoltar appealed the Judgment to the Federal Circuit. On February 1, 2005, the Federal Circuit dismissed Zoltar's appeal, on the basis that there was no final judgment.

This Court's order in May 2005 denied Zoltar's motion for certification of judgment, and stated that the Court would conduct further proceedings to determine a number of remaining issues. On February 27, 2006, the Court scheduled the current round of summary judgment motions.

## III. STANDARDS

**A.   Summary Judgment**

As in any other civil action, summary judgment is proper on a motion for invalidity when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c). Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial has the initial burden of producing evidence negating an essential element of the non-moving

3

1  party's claims or showing that the non-moving party does not have enough evidence of an essential
2  element to carry its ultimate burden of persuasion at trial. <u>Nissan Fire & Marine Ins. Co. v. Fritz.</u>,
3  210 F.3d 1099, 1102 (9th Cir. 2000). Where the party moving for summary judgment would bear
4  the burden of proof at trial, it has the initial burden of producing evidence which would entitle it to a
5  directed verdict if the evidence went uncontroverted at trial. <u>C.A.R. Transp. Brokerage Co., Inc. v.</u>
6  <u>Darden</u>, 213 F.3d 474, 480 (9th Cir. 2000).

7  If the moving party does not satisfy its initial burden, the non-moving party has no obligation
8  to produce anything and summary judgment must be denied. If, on the other hand, the moving party
9  does satisfy its initial burden of production, then the non-moving party may not rest upon mere
10 allegations or denials of the adverse party's evidence, but instead must produce admissible evidence
11 that shows there is a genuine issue of material fact for trial. <u>Nissan Fire & Marine Ins. Co.</u>, 210 F.3d
12 at 1102. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986) ("when the moving
13 party has carried its burden under rule 56(c), its opponent must do more than simply show that there
14 is some metaphysical doubt as to the material facts"). A genuine issue of material fact is one that
15 could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect
16 the outcome of the suit under the governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
17 248-49 (1986).

18 In ruling on a motion for summary judgment, the court must draw all inferences in the light
19 most favorable to the nonmoving party. <u>Ford v. MCI Comm. Corp. Health and Welfare Plan</u>, 299
20 F.3d 1076, 1079 (9th Cir. 2005). Conclusory or speculative testimony in affidavits and moving
21 papers are insufficient to raise genuine issues of fact. See <u>Thornhill Publ'g Co., v. GTECorp.</u>, 594
22 F.2d 739 (9th Cir. 1979).

23 **B.     Validity**

24 A patent enjoys a presumption of validity pursuant to 35 U.S.C. § 282. "Consequently, 'a
25 moving party seeking to invalidate a patent at summary judgment must submit such clear and
26 convincing evidence of invalidity so that no reasonable jury could find otherwise.'" <u>Chrimar Sys.,</u>

4

Inc. v. Cisco Sys., Inc., 318 F. Supp. 2d 476, 491. Title 35 U.S.C. §102(e) provides an independent basis to test validity. Under Section 102(a) of the Patent Act, a patented invention must be "new." 35 U.S.C. § 102(a) precludes the patenting of any invention that "was known or used by others in this country, or patented or described in a printed publication in this or a foreign country" before the date of the invention. § 102(a); Amgen, Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 113, 1352 (Fed. Cir. 2003). Section 102(b) provides that a patent claim is invalid if the patented invention is described in a "printed publication...more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). See Schering Corp. v. Geneva Pharm., Inc., 339 F.3d 173, 1377 (Fed. Cir. 2003). To anticipate under either section 102(a) or 102(b), the "four corners" of a single prior art document must disclose each and every limitation of the claimed invention. Advanced Display Sys. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000). Furthermore, such disclosure must be enabling "such that a person of ordinary skill in the art could practice the invention without undue experimentation." Id. "Every prior art reference must be considered together with the knowledge of one of ordinary skill in the pertinent art." Chrimar, 318 F. Supp. 2d at 491 (citations omitted).

Title 35 U.S.C. §103(a) provides that a patent is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." The ultimate question of patent validity is one of law, however "the conclusion that an invention would not have been obvious is dependent upon several basic factual inquiries." Ryko Manufacturing Co. v. Nu-Star, Inc., 950 F.2d 714, 716 (Fed. Cir. 1991). "When the patented invention is made by combining known components to achieve a new system, the prior art must provide a suggestion or motivation to make such a combination." Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc., 21 F.3d 1068, 1072 (Fed. Cir. 1994). "The factual predicates underlying an obviousness determination include the scope and content of the prior art, the differences between the prior art and the claimed invention, and the level

1 of ordinary skill in the art." In re Rouffet, 149 F.3d 1350 (Fed. Cir. 1998). If the prior art references
2 support a prima facie case of obviousness, then secondary considerations may be used to rebut the
3 prima facie case. WMS Gaming, Inc. v. International Game Technology, 184 F.3d 1339 (Fed. Cir.
4 1999). These secondary considerations, including commercial success, long felt but unsolved needs,
5 and failure of others to invent, are also relevant to the obviousness inquiry. Ryko, 950 F.2d at 716.
6 A district court may grant a motion for summary judgment of invalidity only when the factual
7 inquiries into obviousness present no genuine issues of material fact. See Id.

8   If the record reveals no genuine dispute of material fact, validity may be decided on
9 summary judgment. Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1327 (Fed. Cir.
10 2001). A moving party seeking a finding of no invalidity must show that the nonmoving party, who
11 bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential
12 element of a defense upon which a reasonable jury could invalidate the patent. Eli Lilly & Co. v.
13 Barr Laboratories, Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). Summary judgment is not appropriate,
14 however, if there are genuine issues of material fact remaining. Hoover Group, Inc. v. Custom
15 Metalcraft, Inc., 66 F.3d 299 (Fed. Cir. 1995).

### IV. DISCUSSION

**A.   '130 Patent**

The '130 Patent, titled "Self-Locating Remote Monitoring Systems" is directed at "personal alarm systems." ('130 Patent Col. 1, ll. 23-25.) The parties move for summary judgment on whether claims 31, 32, 34, and 35 are invalid as anticipated by U.S. Patent No. 5,414,432 ("Penny Patent"), or as obvious by the Penny Patent or by a combination of the Penny Patent and U.S. Patent No. 5,587,715 ("Lewis Patent"). Claims 31, 32, 34, and 35 are dependent claims of independent claim 28 and dependent claim 29.

> 28. A personal alarm system remote unit, comprising:
> a radio transmitter and radio receiver for providing a two-way radio communication link;
> a navigational receiver for providing a location of the remote unit;
> a manually operated switch defining a pair of electrical contacts for providing an output signal;

6

    the radio transmitter connected for transmitting the remote unit location and the switch output signal; and
a microphone and speaker connected with the radio transmitter and receiver for providing a two-way voice channel via the two-way radio communication link.

    29. The personal alarm system remote unit as set forth in claim 28, wherein the radio transmitter and receiver comprise a wireless telephone for use with a wireless telephone network.

    31. The personal alarm system remote unit as set forth in claim 29, wherein the wireless telephone is a cellular telephone for operation with a cellular telephone network.

    32. The personal alarm system remote unit as set forth in claim 29, wherein the wireless telephone is a personal communications services telephone for operation with a personal communications services telephone network.

    34. The personal alarm system remote unit as set forth in claim 29, further including a plurality of manually operated switches connected for selectively initiating telephone calls to any one of a plurality of predetermined telephone numbers.

    35. The personal alarm system remote unit as set forth in claim 34, wherein one of the predetermined telephone numbers is the 911 dedicated public safety help telephone number.

    1.    <u>Anticipation</u>

Zoltar argues that Qualcomm cannot show by clear and convincing evidence that the '130 patent is anticipated by the Penny Patent because the Penny Patent does not disclose every limitation of the claims at issue. In particular, Zoltar asserts that the Penny Patent does not disclose a feature for "initiating telephone calls to any one of a plurality of predetermined telephone numbers" as required by Claim 34 and dependent Claim 35, and, as to Claims 31 and 32, Zoltar argues that the Penny Patent discloses a satellite-based communications system and not a "cellular telephone network" or a "personal communications services network."

    a.    "initiating telephone calls to any one of a plurality of predetermined telephone numbers"

Whether a person of ordinary skill in the art would understand "initiating telephone calls to any one of a plurality of predetermined telephone numbers," in Claim 34 and incorporated by dependent Claim 35, as disclosing a device with a speed-dialing function is an issue of claim

7

construction, as of yet unaddressed by this Court.

Claim construction is purely a matter of law, to be decided exclusively by the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 387 (1996). Claims are construed from the perspective of a person of ordinary skill in the art at the time of the invention. Markman v. Westview Instruments, Inc., 52 F.3d 967, 986 (Fed. Cir. 1995). To determine the meaning of the claim terms, the Court initially must look first to the words of the claims themselves, see Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996), and to intrinsic evidence, that is, the claims, the specification, and, if in evidence, the prosecution history. Autogiro v. United States, 384 F.2d 391 (Ct. Cl. 1967). The words of a claim are to be given their ordinary and customary meaning unless it is clear from the specification and prosecution history that the inventor used the term with a different meaning. Vitronics, 90 F.3d at 1582. Where intrinsic evidence alone resolves any ambiguity in a disputed claim term, it is improper to rely on evidence which is external to the patent and file history. Id. at 1585. However, extrinsic evidence may be considered in the rare instances where the intrinsic evidence is insufficient to enable the court to construe disputed claim terms. Id. at 1585. Common sources of extrinsic evidence include expert testimony, inventor testimony, dictionaries, and technical treatises and articles. Id. at 1584.

In order to give meaning to the word "predetermined" in Claims 34 and 35, the inventor must have disclosed a device with a speed-dial function, i.e., preprogrammed telephone numbers permitting the user to dial a telephone number without having to enter all the digits. Qualcomm argues that "predetermined" means simply "predetermined by the user." Such a reading, however, renders the word "predetermined" in the claim language superfluous because it is unlikely that a caller would dial random numbers without having in mind a recipient of that call; ordinarily, telephone calls are made by dialing a particular set of numbers in order to reach a certain recipient. As this Court looks first the claim language, in order for "predetermined" to have meaning within the claim, "predetermined" refers to a speed-dialing feature by which a user can dial a pre-programmed phone number.

Moreover, under the doctrine of claim differentiation, independent claims generally do not include the limitations added by their dependent claims. See Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1380 (Fed. Cir. 2006). Claims 34 and 35 are dependent claims of Claim 28. Claim 28 discloses a "wireless telephone for use with a wireless telephone network." Were this Court to accept Qualcomm's argument that "initiating telephone calls to any one of a plurality of predetermined telephone numbers" merely means the ability to dial telephone calls to numbers that the user has in mind, Claim 34 would be no different from the telephone disclosed in Claim 28. Because there is a presumption that a dependent claim does not disclose the same item as the claim on which it depends, this Court finds that a person of ordinary skill in the art would understand "initiating telephone calls to any one of a plurality of predetermined telephone numbers" as disclosing a device other than an ordinary telephone keypad. See Xerox Corp. v. 3Com Corp., 267 F.3d 1361, 1366 (Fed. Cir. 2001) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.")

Qualcomm also contends that this Court should consider extrinsic evidence of statements by Zoltar's experts regarding the definition of "predetermined." Because this is an issue of claim construction that can be resolved from an examination of the intrinsic evidence alone, the Court will not evaluate the extrinsic evidence. See Markman, 52 F.3d at 981 ("[e]xtrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims").

Because the parties agree that the Penny Patent does not disclose a speed-dial feature, and this Court construes "initiating telephone calls to any one of a plurality of predetermined telephone numbers" as requiring a speed-dial feature, the Penny Patent does not meet each and every limitation of Claim 34 or Claim 35. Claims 34 and 35 are thus not anticipated by the Penny Patent.

    b.  "cellular telephone for operation with a cellular telephone network"

1    The parties also dispute whether the Penny Patent discloses a "cellular telephone for
2 operation with a cellular telephone network" as required by Claim 31. Zoltar's position is that the
3 Penny Patent discloses only a satellite-based system, and not a terrestrial based system as in Claim
4 31. Qualcomm contends that Zoltar has never limited Claim 31 to a terrestrial system, and that the
5 Penny Patent is not limited to a satellite-based system.

6                     i.    Limiting Claim 31 to Non-Satellite Cellular Systems

7    Whether the phrase "cellular telephone" in Claim 31 is limited to a terrestrial system is also a
8 question of claim construction. Courts are charged with walking the fine line between properly
9 interpreting claims in light of the written description, and improperly narrowing the claims by
10 importing limitations from the written description. See Callicrate v. Wadsworth Mfg., 427 F.3d
11 1361, 1368 (Fed. Cir. 2005).

12   The written description in the '130 patent indicates that "cellular telephone network" is
13 limited to non-satellite system because the patentee distinguishes communications satellites from
14 cellular telephones: "Thus the standard communication channel 1064 includes a standard telephone
15 network, communications satellites, relay type radio links and other common carrier technologies
16 such as cellular telephone, wireless communications, and personal communications systems
17 ('PCS')." ('130 patent, Col. 22, ll. 50-54.) Qualcomm argues that no inference should be drawn from
18 this language in the description because the list includes overlapping technologies. For example,
19 Claim 29 discloses a "wireless telephone for use with a wireless telephone network," and dependent
20 Claim 31 further limits the wireless telephone in Claim 29 to a cellular phone.

21   Overlapping technologies within the list of "other common carrier technologies" does not
22 indicate that these "other" technologies overlap with satellite technology. The written description
23 distinguishes between a "communications satellite" and "other common carrier technologies" and of
24 these other common carrier technologies are "cellular telephone, wireless communications, and
25 personal communications systems." As the patentee is free to act as his own lexicographer and
26 define terms either expressly or impliedly, see Schoenhaus v. Genesco, Inc., 440 F.3d 1354, 1358

10

1 (Fed. Cir. 2006), and the patentee in this case distinguished communications satellites from the
2 cellular telephone in Claim 31, this Court finds that Claim 31 does not disclose a wireless telephone
3 that operates with a communications satellite network.

                ii.       Limiting the Penny Patent to Satellite Systems

5        In support of its argument that the Penny Patent anticipates Claim 31, Qualcomm places
6 much emphasis on the Penny Patent's interpretation of "cellular." How the Penny Patent interprets
7 "cellular" may be extrinsic evidence of what a person of ordinary skill in the art would interpret as
8 cellular in the construction of Claim 31 of the '130 patent. However, the relevant question following
9 construction of Claim 31 is not whether the Penny Patent discloses something that the Penny Patent
10 describes as "cellular," but rather whether what the Penny Patent discloses within its four corners is
11 what the '130 patent discloses as "cellular." See Brown v. 3M, 265 F.3d 1349, 1352 (Fed. Cir. 2001)
12 ("that which infringes if later anticipates if earlier").

13        Although the focus of the Penny Patent is on satellite communications technology, see, e.g.,
14 Col. 4, ll. 27-31, Col. 10, ll. 32-39, the written description in the Penny Patent provides notice that
15 the Penny Patent covers more than simply satellite technology. In a glossary of terms, "base station"
16 is defined as "a communication node able to communicate with the position locating radio via a
17 satellite communication system or a combination of a terrestrial and satellite communication system.
18 The base station may be fixed or mobile and earth-based or airborne or in orbit." Col. 2, ll. 53-59.
19 The Penny Patent thus discloses some terrestrial systems as well as satellite systems.

20        It is unclear, however, whether the terrestrial base station system disclosed in the Penny
21 Patent is the same non-satellite cellular system disclosed in Claim 31. Because there remains a
22 genuine issue of material fact as to whether the Penny Patent meets the "cellular telephone"
23 limitation in Claim 31 of the '130 patent as construed by this Court, summary judgment is denied as
24 to both parties. See, e.g., Xerox Corp. v. 3Com Corp., No. 04-1470, 2006 WL 1549961 (Fed. Cir.
25 June 8, 2006) (where a genuine issue of material fact exists as to whether the prior art discloses
26 limitations of an asserted patent, summary judgment of anticipation of the asserted patent is

11

improper).

   c.  "personal communications services telephone for operation with a personal communications services telephone network"

  Claim 32 requires that the wireless telephone in Claim 29 be a "personal communications services telephone for operation with a personal communications services telephone network." In support of its argument that PCS and cellular are distinct technologies, Zoltar cites FCC regulations assigning PCS to a different set of frequencies than cellular phones. Qualcomm argues that this difference in frequencies only means that PCS is a type of cellular, and thus if Claim 31 is anticipated by the Penny Patent, Claim 32 must also be anticipated by the Penny Patent.

  PCS only appears in two places in the '130 patent: in Claim 32 and in a list of "common carrier technologies such as cellular telephone, wireless communications, and personal communications systems ("PCS")" mentioned above. ('130 patent, Col. 22, ll. 50-54.) As Qualcomm points out, this list of common carrier technologies includes overlapping technologies. Unlike the distinction between satellite and "other common carrier technologies," the written description does not assist the Court in ascertaining what a person of ordinary skill in the art would interpret as PCS. The Court notes that the patentee's decision to make Claim 32 a dependent claim of Claim 29 and not a dependent claim of Claim 31 may suggest that the patentee did not view PCS as a clear subset of cellular; however, the Court is unwilling to base its decision wholly on this nuance of claim structure.

  This Court does not have the evidence before it to determine how a person of ordinary skill in the art would interpret the PCS limitation in Claim 32. The FCC regulations submitted by Zoltar indicate that a hypothetical person of ordinary skill in the art may distinguish between PCS and cellular. On the other hand, the testimony of Qualcomm's expert that PCS is merely a subset of cellular indicates that summary judgment in favor of Zoltar would also be inappropriate. Summary judgment is denied as to both parties on the issue of whether PCS and cellular are distinct or overlapping technologies.

### 2. Obviousness

The Penny Patent discloses a two-way voice channel, see Col. 10, ll. 13-17, and the Lewis Patent discloses a cellular system, see Col. 8, ll. 27-35. Whether a person of ordinary skill in the art would combine the references is a factual inquiry. See Mc.Ginley v. Frankiln Sports, Inc., 262 F.3d 1339, 1351-52 (Fed. Cir. 2001); Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1322 (Fed. Cir. 2005). Neither party has demonstrated either that the combination was inevitable or prohibited. Accordingly, summary judgment on whether Claim 31 of the '130 Patent are invalid by obviousness based on a combination of the Penny Patent and Lewis Patent is denied as to both parties.

As discussed earlier, Claim 32 of the '130 patent requires that the wireless telephone in Claim 29 be a "personal communications services telephone for operation with a personal communications services telephone network." Based on the remaining issue of whether PCS is a subset of cellular, summary judgment on whether Claim 32 of the '130 patent is obvious in light of the Penny Patent and Lewis Patent is also denied as to both parties.

## B. Enablement

The enablement requirement is grounded in the Patent Act's requirement that "[t]he specification shall contain a written description of the invention and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art. . . to make and use the same." 35 U.S.C. § 112. Case law has grafted an undue experimentation qualifier onto this enablement requirement. See, e.g., In re Wands, 858 F.2d 731, 737 (Fed. Cir. 1988).

Qualcomm argues that Claim 13 of the '130 Patent, Claim 32 of the "770 Patent, Claim 11 of the '390 Patent are invalid as not enabled. These claims are reproduced below in their entirety:

'130 Patent
13. A personal alarm system, comprising:
a remote unit including a navigational receiver for receiving navigational information, a demodulator for demodulating the receiver navigational information, timing circuits for providing precise time-of-day information, a manually operated switch, defining a panic button and having an output signal

13

>    defining a switch status, operation of the panic button producing a change in the switch status, and a radio transmitter for transmitting the demodulated navigational information, the precise time-of-day information, and the switch status;
>    a base station including a radio receiver for receiving the demodulated navigational information, the precise time-of-day information, and the switch status;
>    the base station also including computational means connected for combining the received demodulated navigational information and the precise time-of-day information to determine a location of the remote unit, and a display for displaying the location of the remote unit; and
>    the base station also including means for displaying the switch status and means responsive to a change in the switch status for giving an alarm,
>    whereby, the remote unit location is displayed, and the alarm is responsive to the panic button.
>
> '770 Patent
>    32. A personal alarm system, comprising:
>    a remote unit including,
>    a navigational receiver for receiving navigational information,
>    a demodulator for demodulating the received navigational information,
>    timing circuits for providing precise time-of-day information, and
>    a radio transmitter for transmitting the demodulated navigational information and the precise time-of-day information; and
>    a base station including,
>    a receiver for receiving the demodulated navigational information and the precise time-of-day information,
>    computational means connected for combining the demodulated navigational information and the precise time-of-day information to determine a location of the remote unit,
>    means for storing information defining a geographical region,
>    means for comparing the computed location with the defined geographical region and determining a positional status, the status defining a relation between the location of the remote unit and the defined geographical region, and
>    means for displaying the location of the remote unit in response to a predetermined positional status.
>
> '390 Patent
>    11. A personal alarm system remote unit, comprising:
>    a navigational receiver for receiving navigational information;
>    a demodulator for demodulating the received navigational information;
>    timing circuits for providing precise time-of-day information;
>    a manually operated switch defining a panic button and having an output signal defining a switch status wherein operation of the panic button produces a change in the switch status; and
>    a radio transmitter for transmitting the demodulated navigational information, the precise time-of-day information, and the switch status.

Each of these claims include the "precise time of day" feature. The Court has previously construed "timing circuits for providing precise time-of-day information" as a means-plus-function element,

14

and defined the structure corresponding to "timing circuit" as "circuitry for generating and/or storing precise time of day information, as represented by Fig. 19 (610) of the '770 patent." (Order re: Claim Construction, Docket Item No. 123.)

In the Order Following Second Claim Construction Hearing (Docket Item No. 259), the Court "refine[d] its earlier claim construction to include the following: 'providing precise time-of-day information' means 'providing a measure of time sufficiently precise to substitute for one satellite,'" but declined to modify its prior construction in response to Qualcomm's arguments regarding the physical structure of "timing circuits."

### 1.    Enablement as to the '130 Patent and the '770 Patent

Qualcomm argues that the "timing circuit" for providing "precise time of day" limitation in Claim 13 of the '130 patent, Claim 32 of the "770 patent, and Claim 11 of the '390 patent are not enabled under § 112. In particular, Qualcomm argues that a "precise time of day" can only be provided if the device includes an atomic clock, but that an atomic clock is too large to be incorporated into the disclosed device. By way of illustration, Qualcomm brought a small rubidium atomic clock to trial. The atomic clock was a rectangular 10-15 pound box roughly a foot in length and 6 inches wide. Such a clock would not fit into a manageable personal cellular telephone.

In response, Zoltar directs the Court to a rebuttal expert report and expert deposition to argue that a person of ordinary skill in the art would, by reference to the patent specification, be able to make the claimed inventions. Although not submitted at trial, the Rebuttal Heppe Report is a part of the record and will be considered, based in part on the unusual procedural posture of the present motions.

"Although the ultimate determination of whether one skilled in the art could make and use the claimed invention without undue experimentation is a legal one, it is based on underlying findings of fact." Warner-Lambert Co. v. Teva Pharm. USA, Inc., 418 F.3d 1326, 1337 (Fed. Cir. 2005). The parties' conflicting expert reports and/or testimony demonstrate the existence of genuine issues of material fact as to whether Claim 13 of the'130 patent and Claim 32 of the '770 patent are

15

enabled. Summary judgment on this issue is denied.

2.  Enablement as to the '390 Patent

The jury found that the claims in the '390 patent were enabled. Based on the issues of fact on enablement that remain, the Court vacates the jury finding that Claim 11 of the '390 patent is enabled as inconsistent with the jury's inability to reach a verdict on whether Claim 13 of the '130 patent and Claim 32 of the '770 patent are enabled.

## V.  CONCLUSION

For the reasons stated above the Court DENIES in PART Qualcomm's motion and strikes in part the affirmative defense of invalidity by anticipation of Claims 34 and 35 of the '130 patent by the Penny Patent. Summary judgment on anticipation of Claims 31 and 32 of the '130 patent, and on the issues of obviousness and enablement is DENIED as to both parties. Qualcomm's request to vacate the jury's verdict that Claim 11 of the '390 patent is enabled is GRANTED.

Dated: July 11, 2006                              /s/ James Ware
01cv20291invalidity                               JAMES WARE
                                                  United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Amy K. Van Zant avanzant@hewm.com
Chris N. Cravey ccravey@wmalaw.com
Danny L. Williams danny@wmalaw.com
Michael M. Markman mmarkman@hewm.com
Robert T. Haslam Robert.Haslam@hellerehrman.com
Ron Schlager LeglBeagl1@AOL.com

Beverly Tucker
California Teachers Association
P.O. Box 921
Burlingame, CA 94011-0921

**Dated: July 11, 2006**                    **Richard W. Wieking, Clerk**

                                            **By:_/s/ JW Chambers_____**
                                                **Melissa Peralta**
                                                **Courtroom Deputy**

United States District Court
For the Northern District of California